```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND

ROBERT R. JONES,                *

     Plaintiff,                 *

v.                              *    Civil Action No. BPG-08-1990

MICHAEL J. ASTRUE,              *
Commissioner of
Social Security,                *

     Defendant.                 *

*     *     *     *     *     *     *     *     *     *     *     *     *
```

## MEMORANDUM

Plaintiff Robert R. Jones brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his[1] claim for supplemental security income ("SSI") under Title XVI of Social Security Act, 42 U.S.C. § 1382. Currently pending are plaintiff's Motion for Summary Judgment and defendant's Motion for Summary Judgment. (Paper Nos. 16 and 19.) These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301. No hearing is deemed necessary. Local Rule 105.6. For the reasons discussed below, the court grants plaintiff's Motion for Summary Judgment, denies defendant's Motion for Summary Judgment, and remands this case to the Commissioner for further proceedings

---

[1] Plaintiff is a transgendered individual who prefers to be called "Chrissy." (R. at 254.) The court, however, will use male pronouns in referring to the plaintiff in order to be consistent with the decisions below.

1

consistent with this opinion.

**I.   Background**

Plaintiff filed for SSI benefits on February 15, 2005.[2]  (R. at 71.)  He alleges disability commencing on February 15, 2005.[3] (R. at 75-89.)  According to plaintiff, he became incapable of engaging in substantial gainful employment at this time as a result of a gunshot wound to back, asthma, syphilis, HIV infection, hepatitis C, and depression.  (Id.)  Plaintiff's application for SSI benefits was denied initially and upon reconsideration.  (R. at 37-44.)

On January 9, 2007, plaintiff, represented by counsel, testified at a hearing before Administrative Law Judge ("ALJ") William F. Clark.  (R. at 261-85.)  Also testifying was a qualified vocational expert ("VE").  (Id.)  In a decision dated April 3, 2007, the ALJ denied benefits.  (R. at 10-19.)  Although the ALJ found that plaintiff suffers from severe physical and mental impairments, including an organic mental disorder, HIV infection, hepatitis C, and chronic back pain syndrome, he concluded that these impairments do not individually or collectively rise to the level of any of the impairments in the

---

[2] Plaintiff filed two previous applications for disability insurance benefits, on May 6, 2002 and September 26, 1986, both of which were denied.  (R. at 71-72.)

[3] Plaintiff initially alleged disability commencing on June 1, 1999 (R. at 71), but on January 9, 2007 he filed a request to amend the alleged onset date to February 15, 2005. (R. at 110.)

Listings of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). (R. at 14-15.) In addition, the ALJ found that the plaintiff is capable of performing work that is available in the national economy based on his residual functional capacity ("RFC"), age, education, and past work experience. (R. at 17-18.) Accordingly, the ALJ concluded that plaintiff is not disabled for the purposes of awarding benefits. (R. at 18-19.)

On June 18, 2008, the Appeals Council held that there was no basis for granting review of the ALJ decision. (R. at 5-8, 254-55.) Plaintiff timely sought judicial review and now petitions this court for summary judgment reversing the ALJ's decision and awarding plaintiff the benefits he has requested. (Paper Nos. 1, 16.) In the alternative, plaintiff asks this court to remand the matter for further proceedings. (Id.)

## II. Standard of Review

The role of this court on review is to determine whether the ALJ applied correct legal standards and whether substantial evidence supports the ALJ's decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is that which "a reasoning mind would accept as sufficient to support a particular conclusion." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). It is more than a scintilla but less than a preponderance of the evidence. Id. It is evidence sufficient to

justify a refusal to direct a verdict if the case were before a jury.  Hays, 907 F.2d at 1456.  In reviewing for substantial evidence, the court does not weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ.  Id.

The Commissioner has promulgated regulations that set forth the following five-step analysis that an ALJ must follow in determining whether a claimant is disabled:

> (1) The ALJ determines whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 et seq.  If so, the claimant is not disabled.
>
> (2) If not, the ALJ examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920.  If not, the claimant is not disabled.
>
> (3) If so, the ALJ considers whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, known as the Listing of Impairments ("Listings").  If so, the claimant is disabled.
>
> (4) If not, the ALJ considers whether the claimant retains the RFC to do past relevant work ("PRW").  If so, the claimant is not disabled.
>
> (5) If not, the ALJ determines whether the claimant is capable of some other work based on the claimant's RFC, age, education, and past work experience.  The Commissioner bears the burden of proof at step five.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).  If the claimant is not capable of other work, the claimant is disabled.

See 20 C.F.R. § 416.920 (2009); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

4

**III. <u>Discussion</u>**

Plaintiff presents two main arguments in support of his Motion for Summary Judgment.  First, plaintiff challenges the sufficiency of the ALJ's evaluation at step three of his analysis of plaintiff's mental condition.  (Paper No. 16 at 7-9.)  Second, plaintiff contends that the single hypothetical that the ALJ posed to the vocational expert failed to accurately reflect plaintiff's mental impairments. (<u>Id.</u> at 5-7.)

    a.   **<u>The ALJ's Step Three Determination</u>**

At step three of the sequential analysis, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or equal any of the impairments in the Listings.  20 C.F.R. § 416.920.  Here, plaintiff alleges that the ALJ did not adequately consider plaintiff's mental condition at step three of his analysis, and that he should have concluded that plaintiff has an affective disorder matching the criteria of Section 12.04 of the Listings.[4]  (Paper No. 16 at 7-9.)

To find that a claimant has a disabling mental disorder under Section 12 of the Listings, the ALJ must find that the plaintiff's condition matches the criteria specified under the relevant listed disorder.  20 C.F.R. § 416.925.  The criteria under Sections 12.02 and 12.04, the relevant sections in this

---

[4] An affective disorder is "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.

review, are broken down into three categories.  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.02, 12.04.  The "A" criteria for these listed mental disorders provide a set of symptoms, signs, and laboratory findings that would medically substantiate the presence of the alleged mental disorder.  Id.  The "B" and "C" criteria set forth impairment-related functional limitations that would typically result from the listed disorder.  Id.  To establish a disorder under Sections 12.02 and 12.04, the plaintiff must demonstrate that his or her disorder matches the "A" and "B" criteria of the relevant disorder, or the "C" criteria.  Id.

Plaintiff alleges that the ALJ should have concluded that he has an affective disorder under Listing 12.04.  (Paper No. 16 at 7-9.)  To satisfy the "A" criteria of Listing 12.04, there must be medically documented evidence of persistence of one of the following syndromes: (1) depressive syndrome;[5] (2) manic syndrome;[6] or (3) bipolar syndrome "with a history of episodic

---

[5] Depressive syndrome is characterized by the presence of at least four of the following: (a) anhedonia or pervasive loss of interest in almost all activities; (b) appetite disturbance with change in weight; (c) sleep disturbance; (d) psychomotor agitation or retardation; (e) decreased energy; (f) feelings of guilt or worthlessness; (g) difficulty concentrating or thinking; (h) thoughts of suicide; or (I) hallucinations, delusions, or paranoid thinking.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04A(1).

[6] Manic syndrome is characterized by the presence of at least three of the following: (a) hyperactivity; (b) pressure of speech; (c) flight of ideas; (d) inflated self-esteem; (e) decreased need for sleep; (f) easy distractability;

6

periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.  To satisfy the "B" criteria of Section 12.04, the ALJ must find that one of the above-listed syndromes results in at least two of the following: "(1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration."  Id.  Finally, to meet the "C" criteria of Section 12.04, there must be a:

> medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) repeated episodes of decompensation, each of extended duration; or (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Id.

In this case, the ALJ found that although plaintiff suffers from a severe organic mental disorder, this condition does not

---

(g) involvement in activities that have a high probability of painful consequences which are not recognized; or (h) hallucinations, delusions, or paranoid thinking.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04A(2).

7

rise to the level of any of the mental impairments under Section 12.00 of the Listings.  (R. at 14-15.)  The ALJ's complete analysis of this issue was as follows:

> Specifically, the preponderance of the medical evidence fails to disclose the existence of a qualifying organic mental disorder characterized by a marked loss of cognitive abilities.  The undersigned Administrative Law Judge has determined that the claimant's organic mental disorder imposes a mild degree of functional limitation with regard to the performance of activities of daily living and a moderate degree of functional limitation with regard to social functioning, concentration, persistence or pace with one or two episodes of decompensation of an extended duration, and which fail to establish the presence of the "C" criteria.

(R. at 15.)

Plaintiff argues that these statements are conclusory and fail to cite any evidence from the record; therefore, he suggests that this court has no basis to determine whether the ALJ's decision was supported by substantial evidence.  (Paper No. 16 at 7-9 (citing Cook v. Heckler, 783 F.2d 1168, 1172-73 (4th Cir. 1986) (reversal appropriate at step three because "we, as a reviewing court, simply cannot tell whether [the ALJ's] decision is based on substantial evidence or not")).)  According to plaintiff, there is evidence in the record that his mental impairment matches the criteria of Section 12.04.  (Id. at 8-9.)

For example, in February 2006, consultative examiner Dr. Purcell Bailey found that plaintiff's cognitive function was "'moderately to severely impaired due to his history of drug

8

abuse, HIV positive status, and depression.'"  (Id. (quoting R. at 195).)  In addition, Dr. Stephen Hirsch, who conducted a consultative psychiatric evaluation of plaintiff in June 2005, concluded that plaintiff's "'Global Assessment of Functioning appears to be at the level of 50 to 55,'" and that he exhibited "'some serious impairments in social and occupational functions, some ritualization, isolation, few friends, questionable ability to maintain himself in a job circumstance, [and] long-term conflicts with others . . . .'"[7]  (Id. (quoting R. at 163).)  Finally, plaintiff notes that he entered treatment for depression in June 2006 after he attempted suicide by running into traffic. (Id. (citing R. at 231).)  At that time, plaintiff reported experiencing "'sadness, [the] feeling that he has nothing to look forward to, feelings of worthless [sic], feelings that he is being punished, loss of interest in daily activities, feelings of guilt, . . . disappointment in self, irritation, poor decision

---

[7] Global Assessment of Functioning (GAF) is a standard measurement of an individual's overall functioning level with respect "only to psychological, social, and occupational functioning." American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., Text Revision 2000).  A GAF of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id. at 34.  A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  Id.

9

making, lack of motivation, and poor appetite.'"  (Id. (quoting R. at 231).)

At the very least, plaintiff suggests, the ALJ was obligated to articulate precisely why he concluded that this evidence did not match the criteria of Section 12.04.  (Id. at 8 (citing Murphy v. Bowen, 810 F.2d 433, 434 (4th Cir. 1987) (remand appropriate because ALJ "failed to articulate any justification for his resolution of a clear conflict in the available medical evidence"); Lancaster v. Apfel, No. PJM-00-1030, 2001 WL 214206, at *4-5 (D. Md. Jan. 22, 2001) (ALJ's step three analysis deficient where ALJ stated solely that no treating physician had "mentioned findings equivalent in severity to the criteria of any listed impairment")).)

In contrast, defendant argues that the evidence in the record of plaintiff's mental condition does not match the criteria of Section 12.04.  (Paper No. 19 at 9-12.)  Although Dr. Bailey found that plaintiff has "moderately to severely" impaired cognitive functioning, and Dr. Hirsch concluded that plaintiff might have serious impairments in social and occupational functions, defendant observes that Section 12.04 requires proof of "marked" restrictions in these functions.  (Id. at 10 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04B).)  In fact, two state agency physicians who completed psychiatric review technique forms for plaintiff, Dr. Deborah A. Rose and Dr.

10

Kenneth Wessel, concluded that plaintiff does not match the criteria of Section 12.04 (and several other sub-sections under Section 12.00), even though he experiences mild to moderate restriction of daily living and has moderate difficulties with social functioning and maintaining concentration, persistence, and pace.  (Id. at 10-11 (citing R. at 169, 179, 208, 218).)  Indeed, defendant notes, when one compares the ALJ's step three analysis with these physicians' findings, it appears that the ALJ adopted their findings, thus belying plaintiff's claim that the ALJ decision does not clearly state the basis of his conclusion at step three. (Id. at 12.)[8]

The court concludes that the ALJ's step three analysis is not sufficient to enable this court to review whether his conclusion was supported by substantial evidence.  At that step, the ALJ stated only that plaintiff's organic mental disorder "imposes a mild degree of functional limitation with regard to the performance of activities of daily living and a moderate degree of functional limitation with regard to social functioning, concentration, persistence or pace with one of two episodes of decompensation of an extended duration."  (R. at 15.)

---

[8] Defendant also defends the ALJ's conclusion that plaintiff does not satisfy the criteria of Section 12.02 of the Listings ("Organic Mental Disorders").  (Paper No. 19 at 11-12.)  Since plaintiff's only argument concerns Section 12.04, and the court concludes that the ALJ did not adequately explain his basis for finding that plaintiff did not meet the criteria of Section 12.04, the court will not address defendant's argument.

11

Although not explicitly stated, it appears the ALJ concluded that plaintiff's mental impairment does not meet the "B" criteria under the Section 12 mental impairments in the Listings.  Id. The ALJ also found that evidence in the record failed to establish the presence of "C" criteria under Section 12 of the Listings.  Id.  The ALJ, however, did not specifically identify any medical evidence supporting his step three analysis.  Id.

The ALJ's duty to compare the evidence of the claimant's impairments to the criteria of the relevant listed impairments is only triggered when there is ample evidence that plaintiff meets or equals the requirements of the listing.  See Ketcher v. Apfel, 68 F. Supp. 2d 629, 645-46 (D. Md. 1999); cf. Huntington v. Apfel, 101 F. Supp. 2d 384, 390-92 (D. Md. 2000) (ALJ did not have duty to compare evidence in record to criteria of relevant Listings because there was not ample evidence in record to support a determination that plaintiff met or equaled any of Listings).  In this case, there is sufficient evidence that plaintiff's mental impairment meets or equals the criteria under Section 12 of the Listings to trigger the ALJ's obligation to specifically discuss those symptoms.

As noted above, Drs. Bailey and Hirsch both made findings supporting plaintiff's position that he met the criteria of Listing 12.04.  While the ALJ quotes their findings, he does not discuss them in the context of the criteria noted in Listing

12

12.04.  Indeed, those findings appear to pertain to several of the criteria set forth in Listing 12.04.  For example, Dr. Hirsch concluded that plaintiff has some "serious impairments in social . . . functions, [including] isolation, few friends, questionable ability to maintain himself in a job circumstance, [and] long-term conflicts with others."  (R. at 163.)  This evidence could establish a history of "social isolation" and avoidance of "interpersonal relationships," which would be sufficient to satisfy the "B" criterion of "[m]arked difficulties in maintaining social functioning."  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00C(2), 12.04B(2).  In addition, Dr. Bailey's conclusion that plaintiff's cognitive function is "moderately to severely impaired due to his history of drug abuse, HIV positive status, and depression" suggests that plaintiff has "[m]arked difficulties in maintaining concentration, persistence, or pace."  (R. at 195); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04B(3).

The ALJ did not discuss this or other evidence relevant to a determination of whether Listing 12.04 applied in this case.  Accordingly, the court is unable to determine whether there exists substantial evidence to support the ALJ's decision at step three of his analysis.  A remand, therefore, is necessary.

      b.    **<u>The Hypothetical Question Presented to the VE</u>**

Plaintiff next argues that the ALJ erred at step five of the sequential analysis because the ALJ's hypothetical question to

13

the testifying VE did not accurately reflect plaintiff's limitations.  (Paper No. 16 at 5-7.)  Specifically, plaintiff contends that the ALJ improperly failed to include limitations related to his mental impairment.  (Id.)

At step five, the ALJ determines whether there is work that the claimant could perform based on the claimant's residual functional capacity ("RFC")[9], age, education, and past work experience.  20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 142 (1987).  If a claimant demonstrates the presence of non-exertional impairments (i.e., a mental impairment), which the plaintiff did in this case, the ALJ must prove by expert vocational testimony that, despite the combination of non-exertional and exertional impairments, specific jobs exist in the national economy which he or she can perform.  Grant v. Schweiker, 699 F.2d 189 (4th Cir. 1983).

While plaintiff argues that the ALJ's hypothetical question at step five was improper, the premise for plaintiff's argument is that the ALJ did not properly consider plaintiff's mental impairments in formulating plaintiff's RFC at step four.  (Paper No. 16 at 5-7.)  The determination of RFC is an assessment "based on all the relevant evidence," including all of the claimant's

---

[9] "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling ("SSR") 96-8P.

14

impairments. 20 C.F.R. § 404.945. It "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence. . . ." Social Security Ruling ("SSR") 96-8P; see also Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (ALJ must evaluate effect of all plaintiff's impairments and adequately explain his or her RFC findings).

In this case, the ALJ summarized the evidence he deemed relevant to his RFC determination. (R. at 15-17.) Specifically, he summarized evidence in the record regarding plaintiff's (1) hospitalization in 1999, in which he was diagnosed with multiple impairments including HIV and substance abuse; (2) comprehensive consultative examinations by Drs. Purcell Bailey, Steven Hirsch, and Nicola Cascella between April 15, 2005 and February 19, 2006; (3) treatment for depression and suicidal ideation at the Baltimore Behavioral Health Center from June 26, 2006 to August 2, 2006; (4) assessments by non-examining consultants with the Maryland Disability Determination Services; and (5) subjective complaints and limitations identified by plaintiff at his hearing. (Id.) After summarizing this evidence, the ALJ concluded:

> [T]he claimant has the residual functional capacity to perform unskilled, light work, as defined and described in the Social Security Rules and Regulations, which would allow for a sit/stand option and would require only occasional contact with the general public or coworkers and would not require climbing of ladders, ropes or scaffolds and would

15

require only occasional climbing of stairs or ramps.

(R. at 17.)

Accordingly, the ALJ posed the following hypothetical to the VE:

> [U]nder the assumption that I find a person such as the Claimant, with his age, education and past relevant work experience, can do work at the light exertional level where he has the option to sit or stand at will, where he would never climb ladders, ropes or scaffolds, where he would not more than occasionally climb ramps or stairs, where he would be restricted to unskilled work where he would have not more than occasional contact with the public and co-workers, would he be able to do any work in the local or national economy?

(R. at 277-78.)

The VE responded that such a person could perform a number of light, unskilled jobs in the local or national economy, such as machine feeder, mail clerk, and mail sorter or inspector. (R. at 278.) Based on the VE's testimony, the ALJ found at step five that "[t]here are jobs that exist in significant numbers in the national economy, which the claimant can perform, which are consistent with all medically determinable impairments, functional limitations, age, education, and work history." (R. at 17-18.)

Plaintiff argues that the ALJ's hypothetical question was flawed because it did "not account for [his] severe mental condition." (Paper No. 16 at 5 (citing Walker, 889 F.2d at 50 (VE's opinion "must be in response to proper hypothetical questions which fairly set out all of claimant's impairments")).)

16

In particular, according to plaintiff, the "hypothetical did not contain any specific limitations related to [his] depression." (Id. at 4.)  Defendant argues that the ALJ's inclusion of the limitation that plaintiff could have "only occasional contact with the public and co-workers" adequately accounted for plaintiff's mental limitations.  (Paper No. 19 at 12-15.)

For the reasons provided herein, the court cannot determine whether there is substantial evidence to support the ALJ's RFC finding at step four, and therefore, cannot determine whether his hypothetical question to the VE accurately set forth all of plaintiff's impairments.  In particular, the court finds that, although the ALJ recited the evidence he considered in reaching his RFC conclusion, the ALJ did not explain how the evidence supported his conclusions.

Importantly, the ALJ failed to explain how he accounted for evidence in the record regarding plaintiff's mental impairments. For instance, the ALJ did not explain how he considered Dr. Hirsch's June 2005 report and Dr. Cascella's February 2006 report, which both assessed plaintiff's GAF in the 50-55 range. (R. at 163, 185.)  The relevance of this evidence is apparent given that the VE testified, in response to a question from plaintiff's counsel, that the ALJ's hypothetical individual "would not be able to perform any work" if he had a GAF of 50. (R. at 283.)  Further, there is evidence that plaintiff's

17

condition deteriorated in June 2006, when he was admitted to Baltimore Behavioral Health Center after he allegedly attempted suicide twice in a one-month period.  (R. at 240.)  At that time, plaintiff was assessed with a GAF in the 20-27 range.  (Id.)  The ALJ did not address this evidence either.  (R. at 15-17.)

Similarly, the ALJ's RFC analysis does not detail how the ALJ considered Dr. Rose and Dr. Wessel's Mental Residual Functional Capacity Assessments ("MRFCAs").  (Id.)  Dr. Rose concluded that plaintiff had moderate limitations in 13 mental activities, including the "ability to understand and remember detailed instructions," the "ability to maintain attention and concentration for extended periods," and the "ability to work in coordination with or proximity to others without being distracted by them."  (R. at 165-66.)  Dr. Wessel found that he had moderate limitations in seven mental activities.  (R. at 222-23.)  Again, the VE's testimony demonstrates the relevance of this evidence as he testified, in response to a question from plaintiff's counsel, that the hypothetical individual "would not be able to perform substantial gainful activity" if he had the moderate limitations cited in Dr. Rose's MFRCA.  (R. at 280-82.)

In addition, plaintiff testified extensively about his struggles with his sexual identity and the stress and depression it has caused.  (R. at 266-69.)  Although the ALJ cited this testimony in his opinion, he concluded that it, as well as

18

plaintiff's other subjective complaints and limitations, were "overstated." (R. at 17.) The ALJ, however, did not articulate his reasons for this conclusion.[10] (Id.)

In sum, the court cannot conclude that the ALJ's RFC assessment and the hypothetical incorporating that assessment are supported by substantial evidence. Accordingly, a remand is necessary so that the ALJ can elaborate on his consideration of the evidence of plaintiff's mental impairments.

## IV. Conclusion

For the foregoing reasons, the court grants plaintiff's Motion for Summary Judgment (Paper No. 16), and denies defendant's Motion for Summary Judgment (Paper No. 19). A separate Order shall issue.

Date: 09/25/09                                    /s/
                                                  Beth P. Gesner
                                                  United States Magistrate Judge

---

[10] In his Motion for Summary Judgment, defendant offers a number of explanations for how the evidence supports the ALJ's RFC conclusion. For instance, defendant explains that even though Dr. Rose found that the plaintiff had a variety of moderate limitations, she ultimately concluded that the plaintiff's "mental residual functional capacity appeared compatible with work." (Paper No. 19 at 14-15 (citing R. at 167).) The defendant's post hoc explanations, however, do not remedy the ALJ's failure to explain his conclusions. Schoofield v. Barnhart, 220 F. Supp. 2d 512, 521 n.9 (4th Cir. 2002).

19